UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT E. STEARNS,<br><br>            Plaintiff,<br><br>    v.<br><br>FLORES, et. al.,<br><br>            Defendants.<br>_____/ | CV F   00 6331 AWI SMS P<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 261) |

Scott E. Stearns ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**A. RELEVANT PROCEDURAL HISTORY**

Plaintiff filed the instant action on September 1, 2000. On April 3, 2001, the Court dismissed the Complaint with leave to amend.[1] Plaintiff filed a First Amended Complaint on April 27, 2001. (Doc. 20.) The Court screened this Complaint and on June 12, 2001, the Court found the Complaint stated a cognizable claim against Defendants Jacquez, Sanchez, Edwards, Espinoza, Johnson, Lilly, Leeper, Duvall, Pineda, Flores, Saturnio, Caretto, Casey, Brown and

---

[1] The Court found that Plaintiff failed to allege facts sufficient to state an Eighth Amendment failure to protect claim. (Doc. 15.)

1

1  Mata. (Doc. 21.) On September 20, 2001, the Court issued an Order directing service of the
2  Complaint. (Doc. 31.)
3       On September 21, 2001, Plaintiff moved for leave to amend the complaint which was
4  later denied as moot. (Doc. 33.) On November 26, 2001, Defendants moved for dismissal on
5  the grounds that Plaintiff had failed to exhaust administrative remedies.
6       On January 4, 2002, the Court issued Findings and Recommendations that the Motion to
7  Dismiss be granted as to all but Defendant Flores and that the action proceed only against
8  Defendant Flores.[2] The District Court adopted the Recommendations on April 3, 2002. (Doc.
9  93.)
10      On August 27, 2002, Plaintiff filed a Motion to file a "Supplemental" complaint and also
11 lodged the "Supplemental" complaint. (Docs. 132, 133.)
12      On November 7, 2002, the District Court vacated its Order adopting the Findings and
13 Recommendations granting dismissal as to all but one Defendant. The Court adopted the
14 Findings with the modification that the action proceed against Flores, Sanchez, Lilly, Leeper,
15 Saturnio and Johnson because those Defendants were not named in the caption of the Motion to
16 Dismiss filed by Defendant's. (Doc. 135.)
17      On December 17, 2002, Defendants filed a Second Motion to Dismiss on the basis of
18 exhaustion. (Doc. 136.) The Court, on February 4, 2003, issued an Order granting Plaintiff's
19 Motion to file a Supplemental Complaint, ordered that the lodged complaint be filed and deemed
20 it to be Plaintiff's Second Amended Complaint. The Court further denied any allegations made
21 against the Defendants the Court previously dismissed from the action and granted Plaintiff's
22 request to add as defendants, Alexander, Fischer, Cowen, Nordyke, Floto, Vaughn, Shannon,
23 Ahlin and Atkinson. (Doc. 143.) The Court issued a separate order on February 4, 2003,
24 finding the Complaint to state a cognizable Eighth Amendment and Due Process claims against
25 Flores, Sanchez, Lilly, Leeper, Saturnio, Johnson, Alexander, Fischer, Cowen, Nordyke, Floto,
26 Vaughn, Shannon, Ahlin and Atkinson and ordered service of the Complaint. (Doc. 146.) The
27
28       [2]Defendants Jacquez and Casey were not properly served.

2

1  Court also Recommended that the Motion to Dismiss be denied without prejudice to a refiling at
2  a later date. (Doc. 147.)
3  　　　On April 15, 2003, Defendants filed a third Motion to Dismiss on the basis of exhaustion.
4  (Doc. 168.) The Court issued Findings and Recommendations on November 24, 2003 that the
5  Motion be denied. (Doc. 192.) The Recommendation was adopted by the District Court on
6  February 2, 2004. (Doc. 212.)
7  　　　On March 5, 2004, Defendants filed a Motion for Summary Judgment. (Doc. 217) On
8  March 17, 2004, Plaintiff filed his Reply to the Motion for Summary Judgment. (Doc. 225.)
9  Defendants filed a Response to the Reply on March 26, 2004. (Doc. 230.) On May 28, 2004, the
10 Court recommended that the Motion for Summary Judgment be denied with regard to the due
11 process claim against all Defendants because Defendants failed to provide the Court with
12 evidence to support the Motion. The Court also recommended that the failure to protect claim
13 against Defendant Flores[3] be denied and that the Motion be granted with respect to the failure to
14 protect claim against Defendant Saturnio. (Doc. 240.) The District Court adopted these findings
15 on September 10, 2004. (Doc. 260.)
16 　　　Defendants filed a Motion for Summary Judgment with supporting evidence on
17 September 27, 2004, addressing only the due process issue.[4] (Doc. 261.) Plaintiff did not file an
18 Opposition to the Motion for Summary Judgment but on October 14, 2004, filed a "Cross Motion
19 for Summary Judgment." (Doc. 266.)

---

[3] According to the Court's recommendation, Defendant Flores provided a declaration that he was unaware of the threat of attack against Plaintiff and that Plaintiff requested that he be housed on the white yard. Plaintiff, however, provided a declaration to the contrary and thus, there existed a disputed issue of material fact warranting the denial of summary judgment on the failure to protect claim. See, Doc. 240. Thus, the Eighth Amendment claim against Defendant Flores is still viable.

[4] Defendants requested and were granted the filing of the Exhibit V under seal. (Doc. 269, 281.) However, upon review of the Motion for Summary Judgment, and evidence filed under seal, and the record, the Court determined that all of the evidence used to validate Plaintiff and contained in Exhibit V, was not disclosed to Plaintiff for the purposes of these federal proceedings as required by the Federal Rules of Civil Procedure. Thus, the Court gave Defendants the option of serving Plaintiff with the copies so that Plaintiff could present a defense to the Motion, that Defendants withdraw their Motion for Summary Judgment or provide the Court with legal authority that would allow it to resolve a dispositive motion relying on evidence not disclosed to the opposing party. On June 15, 2005, Defendants served Plaintiff with two documents that were used to validate him as a NLR member and were submitted to the Court under seal. Accordingly, the Court now examines the Motion for Summary judgment relying solely on the evidence either disclosed to Plaintiff by Defendants or that Plaintiff submitted.

1  On October 25, 2004, Defendants filed their Opposition to Plaintiff's cross-Motion for
2 Summary Judgment.  (Docs. 270-271.)  Plaintiff filed his Reply to Defendant's Opposition on
3 November 1, 2004.  (Docs. 272, 273.)

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

1  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
2  suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
3  Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that
4  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for
5  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6       In the endeavor to establish the existence of a factual dispute, the opposing party need not
7  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
8  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
9  trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
10 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
11 Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963
12 amendments).

13      In resolving the Motion for Summary Judgment, the Court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
15 any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477
16 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
17 court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United
18 States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not
19 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from
20 which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-
21 45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

22      Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23 show that there is some metaphysical doubt as to the material facts. Where the record taken as a
24 whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine
25 issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

C. **UNDISPUTED FACTS**[5]

1. On March 30, 1999, inmate Stearns was housed in Administrative Segregation for an assault on staff. (Exh. A, Motion for Summary Judgment ["Motion"]; Exh. 3, Second Amended Complaint ["Second Am.Compl.]; Plaintiff's Cross Motion for Summary Judgment at 2.)

2. On April 6, 1999, Plaintiff was identified as an associate of the prison gang Nazi Low Riders ("NLR"), by Defendants Institutional Gang Investigators ("IGI") Lieutenant Leeper and Sergeant Pineda. (Exh. B, Motion; Second Am. Compl. at 10; Exh. 1, 4, Second Am. Compl. at 10.)

3. This classification was based upon (1) a confidential memorandum dated January 27, 1999, from a validated NLR member identifying Stearns as an NLR associate; (2) a California Department of Corrections ("CDC") Form 128-B dated March 30, 1999, describing a picture belonging to Stearns with the letters NLR used for shading in a helmet; (3) a CDC Form 128-B dated April 5, 1999, by a validated NLR member, describing Plaintiff as an active NLR associate; and (4) a confidential CDC Form 128-B dated April 2, 1999, listing Stearns as an NLR associate by a validated member. (Exh. C, Motion; Exh. 2, Second Am. Compl.)

4. On April 8, 1999, the Institutional Classification Committee ("ICC"), conducted an initial review of Plaintiff's classification and determined that he should remain in Administrative Segregation ("Ad-Seg") due to disciplinary reasons. (Exh. D, Motion; Exh. 8, Second Am. Compl.)

5. On April 12, 1999, pursuant to California Code of Regulations, title 15, Section

---

[5]The following facts are undisputed for the purpose of this Motion. Plaintiff neither admitted or denied the facts set forth by defendants as undisputed nor filed a separate statement of disputed facts in an Opposition. Local Rule 56-260(b). Therefore, the Court compiled the statement of undisputed facts from Defendants' statement of undisputed facts and Plaintiff's verified amended complaint and opposition. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Complaint is not contradictory.

|   |     |                                                                                          |
|---|-----|------------------------------------------------------------------------------------------|
| 1 |     | 3378(c)(2)-6, a gang validation package was submitted to the CDC's Law                   |
| 2 |     | Enforcement and Investigations Unit ("LEIU")/Special Services Unit ("SSU") by            |
| 3 |     | Defendant Lt. Leeper, the IGI.  (Exh. E, Motion; Exh. 5, Second Am.Compl; Exh.           |
| 4 |     | T, Plaintiff's Objections to Application to Seal ["Plaintiff's Objections"].)            |
| 5 | 6.  | On May 6, 1999, the ICC conducted a 30 day review of Stearns classification and          |
| 6 |     | determined that Plaintiff should remain in Ad-Seg due to disciplinary reasons and        |
| 7 |     | further noted that he had been validated as an NLR member. (Exh. F, Motion;              |
| 8 |     | Exh. 9, Second Am. Compl; Second Am. Compl at 11.)                                       |
| 9 | 7.  | On June 10, 1999, the ICC conducted a review of Plaintiff's classification and           |
| 10|     | determined that he should remain in Ad-Seg.  (Exh. F, Motion; Exh. 10, Second            |
| 11|     | Am.Compl;  Second Am.Compl at 11.)                                                       |
| 12| 8.  | On July 1, 1999, the ICC conducted another thirty day review of Plaintiff's              |
| 13|     | classification and again determined that he should remain in Ad-Seg.  (Exh. F,           |
| 14|     | Motion; Exh. 12, Second Am. Compl; Second Am. Compl at 11.)                              |
| 15| 9.  | On July 15, 1999, Plaintiff filed a 602 Inmate/Parolee Appeal form, alleging that        |
| 16|     | Defendant Sgt. Flores was discriminating and abusing his duties by harassing and         |
| 17|     | insulting him.  (Exh. I, Motion; Exh. 13, Second Am. Compl.; Second Am.                  |
| 18|     | Compl. at 12.)                                                                           |
| 19| 10. | On July 29, 1999, the ICC conducted a thirty day review of Plaintiff and                 |
| 20|     | determined that he should remain in Ad-Seg.  (Exh. J, Motion; Exh. 13, Second            |
| 21|     | Am. Compl; Second Am. Compl at 13.)                                                      |
| 22| 11. | On August 26, 1999, the ICC conducted a thirty day review of Plaintiff and               |
| 23|     | determined that he should remain in Ad-Seg.  (Exh. L, Motion; Exh. 18, Second            |
| 24|     | Am.Compl; Second Am. Compl. at 13.)                                                      |
| 25| 12. | On September 9, 1999, Plaintiff filed a 602 appeal form alleging that the                |
| 26|     | information used to validate him as a gang member was inadequate.  (Exh. M,              |
| 27|     | Motion; Exh. 19, Second Am. Compl; Second Am.Compl at 14.)                               |
| 28| 13. | On September 23, 1999, the ICC conducted another thirty day review and                   |

|   |     |   |
|---|-----|---|
| 1 |     | determined that he should remain in Ad-Seg.  (Exh. N, Motion; Exh. 20, Second |
| 2 |     | Am. Compl.) |
| 3 | 14. | On October 21, 1999, the ICC conducted a thirty day review and determined that |
| 4 |     | Plaintiff should remain in Ad-Seg.  (Exh. O, Motion; Exh. 21, Second Am. |
| 5 |     | Compl; Second Am. Compl at 14.) |
| 6 | 15. | On November 18, 1999, the ICC conducted a thirty day review and determined |
| 7 |     | that Plaintiff should remain in Ad-Seg.  (Exh. P, Motion; Exh. 22, Second Am. |
| 8 |     | Compl; Second Am. Compl at 14.) |
| 9 | 16. | On March 23, 2000, the ICC conducted a one hundred twenty (120) day review |
| 10 |    | and determined that Plaintiff should remain in Ad-Seg pending transfer to the |
| 11 |    | Secured Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP.")  (Exh. Q, |
| 12 |    | Motion; Exh. 27, Second Am. Compl; Second Am. Compl at 15.) |
| 13 | 17. | On August 4, 2000, Plaintiff was transferred to PBSP.  (Exh. R, Motion; Second |
| 14 |    | Am. Compl at 16.) |
| 15 | 18. | On November 19, 2001, Plaintiff filed a State Writ of Habeas Corpus in Del Norte |
| 16 |    | County Superior Court.  (Exh. S, Motion; Second Am. Compl at 22.) |
| 17 | 19. | On June 5, 2002, Del Norte Superior Court Judge Follett conducted an *in camera* |
| 18 |    | review of the documents used to validate Plaintiff as an NLR associate and found |
| 19 |    | that some of the information used was not specific enough.  Judge Follett issued |
| 20 |    | an Order that PBSP release Plaintiff and re-evaluate his gang validation.  (Exh. S, |
| 21 |    | Motion; Second Am. Compl at 25.) |
| 22 | 20. | On June 21, 2002, a re-evaluation of Stearns gang status was conducted at PBSP |
| 23 |    | by IGI Lt. Wise.  Lt. Wise noted that a confidential 128-B form was removed |
| 24 |    | because it contained a reference to Plaintiff being "NLR."  The reference did not |
| 25 |    | state if Stearns was a member or associate and did not contain a reliability |
| 26 |    | statement which is required of all confidential documents.  Two additional |
| 27 |    | documents were removed due to no reliability statements, a confidential 128-B |
| 28 |    | form dated April 5, 1999, and a confidential memorandum dated January 27, |

1999. (Exh. T, Motion; Exh. J, Plaintiff's Objections.)

21. On June 21, 2002, the following eight (8) pieces of documentation were found to meet Plaintiff's validation and CDC's validation requirements (Exh. T, Motion; Exh. J, Plaintiff's Objections.)

  a. CDC Form 128-B dated March 30, 1999, authored by Defendant IGI Sgt Pineda noting that during a search of Plaintiff's cell, a picture was discovered depicting NLR gang graffiti. (Exh. A, Defendant's Supplemental Motion Exh. L, Plaintiff's Objections.)

  b. Confidential memorandum dated April 6, 1999, by Defendant IGI Sgt Pineda documenting statements of a reliable source who identified Plaintiff as an NLR member and one plotting an assault against another inmate alleged to be a gang dropout to further his cause with the NLR. (Exh. V, Motion - submitted under seal.)

  c. CDC Form 128B, dated April 10, 1999, authored by Lt. Lara and noting that Plaintiff willingly participated in an NLR orchestrated disturbance in Ad-Seg where several correctional officers were assaulted during cell extractions. (Exh. V, Motion - submitted under seal.)

  d. Confidential Memorandum dated June 4, 1999, authored by Defendant IGI Sgt. Pineda documenting statements of a reliable source who identifies Plaintiff as an NLR "prospect." The source stated the term "prospect" is used to identify one who associates with or is associating doing NLR ordered work, such as assaults on other inmates or staff for full gang membership. (Exh. V, Motion - submitted under seal.)

  e. CDC Form 128B, dated June 23, 1999, authored by Correctional Officer Truitt. This states that during a morning meal tray pick up, Officer Truitt overheard several inmates participating in the daily routine known as "gang roll call," which was initiated by two validated NLR members and which Plaintiff participated in. (Exh. O, Plaintiff's Objections; Exh. V -

submitted under Seal.)

    f.    Confidential memorandum dated July 2, 1999, authored by Defendant IGI Sgt. Pineda documenting the interception of correspondence authored by Plaintiff and between him and a validated NLR member. Plaintiff informs the NLR member in the correspondence that he could not make the agreed upon assault because they were locked down, so he assaulted Correctional Officer Caline instead. Plaintiff discussed other NLR activities in this document as well. (Exh. B, Defendant's Supplemental MPA.)

    g.    Confidential memorandum dated December 13, 2000, authored by Defendant IGI Sgt Pineda documenting statements of an inmate, identified as a reliable source, identifying Plaintiff as an NLR member and weapons maker for the NLR. (Exh. V, Motion - submitted under seal.)

    h.    Confidential memorandum dated October 12, 2001, authored by IGI Akin documenting information from a confidential informant identifying Plaintiff as an NLR associate and as being assaulted by three inmates who were actively affiliating/associating with the NLR at the time. The source also indicated that Plaintiff is still in good standing with the NLR and the assault was intended only as a measure of discipline for something he had done without gang approval. This was found to be supported by Plaintiff's request that two of the three inmates who assaulted him be removed from his enemy list. Lt. Wise submitted this information to the LEIU requesting a new gang validation. (Exh. V, Motion - submitted under seal.)

22. On June 27, 2002, LEIU Investigator Olson reviewed the information provided by Lt. Wise and determined that Plaintiff is a validated associate of the NLR. (Exh. U, Motion.)

**D. ANALYSIS**

*1. Summary of Complaint*

The Second Amended Complaint alleges that several prison officials violated his due

process rights by relying on "uncredible" evidence to validate him as a gang member.

### 2. Gang Validation Process

An inmate may be identified by CDC staff as a potential gang member based on his behavior. An Institutional Gang Investigator, who generally has experience with gangs, investigates the inmate's possible gang activities and determined whether there is sufficient evidence to validate the inmate. The IGI also interviews the inmate to allow him to rebut the evidence supporting the contemplated validation.

Under California State Regulations, an inmate may be validated based on a *minimum* of three or more source items indicating gang activity, such as self-admission, writings, tattoos, photos, information from informants, and association/communication with other gang members or associates. 15 Cal.Code Regs. § 3378. The inmate is normally placed in administrative segregation pending review and if validated, assessed an indeterminate ad-seg term in the Secured Housing Unit. Id.; 15 Cal.Code Regs § 3341.5(c). Once validated as a gang member, an inmate can be released under several circumstances, the most common of which are debriefing (i.e., disassociating himself from the gang), inactivity in the gang and release from custody. 15 Cal.Code Regs. § 3378.

### 2. Due Process Claim

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. In Sandin v. Connor, 515 U.S. 472 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. Id. at 481-84. Instead, the Court adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. Id. In doing so, the Court held that liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Where a protectable liberty interest exists, the Supreme Court has set out the following procedural due process requirements for disciplinary detention of a prisoner: (1) written notice of

the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994); Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987). However, prisoners are not entitled to the full progeny of the due process protections, due process in this context requires some notice of the charges against him and a meaningful opportunity to present his views to the critical decisionmakers. See Mathews v. Eldridge, 424 U.S. 319, 333 (91976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citations and internal quotation marks omitted); Madrid v. Gomez, 889 F.Supp. 1146, 1277 (N.D. Cal. 1995).

Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. The "some evidence" standard applies to an inmate's placement in SHU for gang affiliation. See Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir.2003). There is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); see also, Toussaint v. McCarthy, 926 F.2d 800, 803

1   (9th Cir.1990), *cert. denied*, 502 U.S. 874, 112 S.Ct. 213 (1991) (considering accuracy of
2   polygraph results when used as evidence to support placement in administrative segregation);
3   <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987) (evidence relied upon by a prison disciplinary
4   board must have "some indicia of reliability").

5         In this case, it is important to note that Plaintiff does not allege that he was not given
6   adequate notice of the charges and hearings concerning his validation. He instead argues that the
7   evidence relied on to validate him as a member of the Nazi Low Riders prison gang is
8   "uncredible." Nevertheless, the undisputed facts show that Plaintiff *was* provided with the due
9   process requirements of notice and the opportunity to be heard. (Undisputed Fact Nos. 2, 4, 5,
10  Exh. A, B, C, Motion; Exh. 1, 2, 4, 5, Second Am. Compl.) Accordingly, the Court turns to the
11  second prong of the analysis requiring that "some evidence" in the record support the validation.

12        Although Plaintiff alleges that the evidence used to validate him as "uncredible," he
13  presents no evidence to the contrary. Plaintiff is in the difficult position of having to refute the
14  evidence that he is a gang member when he was not allowed to examine the very evidence used
15  against him in the validation proceedings. Similarly, because the Defendants submitted the entire
16  contents of the validation package as evidence in support of the Motion for Summary Judgment
17  under seal, Plaintiff was effectively denied the ability to refute the Motion for Summary
18  Judgment. The Court noted the due process concerns in an Order that also directed Defendants
19  to either disclose the evidence, withdraw the Motion for Summary Judgment or provide the
20  Court with authority that would allow it to resolve a dispositive motion in favor of one party
21  when that party has not disclosed the evidence relied upon to the opposing party. Defendants
22  filed a Supplemental Memorandum of Points and Authorities regarding the use of the sealed
23  exhibits in support of their Motion for Summary Judgment. Defendants urged this Court to
24  adopt the procedure used by the Northern District wherein the Court would rely on evidence
25  submitted under seal and without disclosure to the Plaintiff in ruling on a Motion for Summary
26  Judgment. However, Defendants cited to no authority addressing the constitutional issues raised
27  by the Court. Despite the lack of legal authority, Defendants disclosed two pieces of evidence
28  used to validate Plaintiff as a member of the NLR. Accordingly, the Court finds Plaintiff's has

1  been afforded his right to know what evidence is being used against him in this civil proceeding
2  and has been afforded the opportunity to present substantive opposing evidence.
3      The United States Supreme Court, in <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985),
4  held that there needn't be "a particular number of pieces of evidence to support the decision." but
5  only that "some evidence" support the disciplinary decision. <u>Superintendent v. Hill</u>, 472 U.S.
6  445 (1985). In this case, Defendants provide the Court (and Plaintiff) with evidence that on
7  March 30, 1999, Defendant IGI Sgt. Pineda authored a CDC Form 128-B indicating that a search
8  of Plaintiff's cell produced a picture depicting NLR gang graffiti. (Exh. A, Defendant's
9  Supplemental MPA; Exh L, Plaintiff's Objections).  Defendants also provide a copy of the
10 picture for the Court's review. <u>Id</u>.
11     A second piece of evidence consisting of a letter authored by Plaintiff between himself
12 and a validated NLR member informing the member that Plaintiff believed he was "taking too
13 long" because of a lock down so he instead, he "checked" Correctional Officers Carline and
14 Wilson. (Exh. B, Defendant's Supplemental MPA.) The letter discusses other NLR activities as
15 well.
16     Following a thorough examination of documents submitted by Plaintiff to this Court, the
17 Court finds that Plaintiff has in his possession a CDC Form 128-B, dated June 23, 1999, and
18 authored by Correctional Officer Truitt. (Exh. O, Plaintiff's Objections.)  This CDC 128-B form
19 was states that during a morning meal tray pick up, Correctional Officer Truitt overheard several
20 inmates participating in the daily routine known as "gang roll call." <u>Id</u>. The "roll call" was
21 initiated by two validated gang members and Plaintiff participated in the roll call. <u>Id</u>. This piece
22 of evidence appears as Undisputed Fact No. 20(e) and was submitted to the Court as an
23 attachment to Plaintiff's Motion for Sanctions and Plaintiff's Opposition to the Application to
24 Seal.
25     The Court finds that the information relied on by correctional officers more than meets
26 the "some evidence" standard. The Court further finds the evidence reliable. The picture hand
27 drawn by Plaintiff clearly depicts a skull with a World War II style helmet Nazi alongside a low
28 rider auto and appears to have the letters NLR turned upside down in the shading of the helmet.

The letter clearly states that Plaintiff "checked" two Correctional Officers as a result of Plaintiff's belief he was "taking too long" and further cites to California Penal Code Section 4501.5 (Battery Upon a Person Not a Prisoner) in relation to the fact that he was awaiting the outcome of the "referral" of his actions, presumably, to the District Attorney.

As noted above, Plaintiff did not file an Opposition to the Motion for Summary Judgment. However, Plaintiff did submit a Response to Defendant's Supplemental Memorandum of Points and Authorities wherein Defendants disclosed to him the picture and letter. Plaintiff complains that these documents were not submitted in his State Habeas case. However, the outcome of the state proceeding has no bearing on this action or the resolution of the Motion for Summary Judgment.

Plaintiff also argues that the standard of review is not Superintendent v. Hill, but Castillo v. Alameda. Plaintiff provides no citation to the Castillo case but states it is a Northern District of California case. The dispositions of the Northern District, however, do not constitute the law by which this Court is bound. The holding of Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985), issued by the United States Supreme Court, *is* the appropriate authority by which this Court and applies.

Plaintiff also challenges the "reliability" of the documents but does not state specifically which documents he is referring to. Other than his assertion, however, Plaintiff provides no evidence controverting the evidence submitted by Defendants. To the extent Plaintiff is challenging the reliability of the evidence produced by confidential informants and used to validate him, his claim fails.[6] In resolving the instant Motion for Summary Judgment, the Court

---

[6] In determining reliability, if the information relied upon by the disciplinary committee consists of statements by an unidentified informant, due process requires that the record contain: (1) some factual information from which the committee can reasonably conclude that the information is reliable and (2) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's identity. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987). Reliability may be established by: (1) the oath of the investigating officer appearing at the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of the sources of the information and considered them reliable based on the informant's past record, or (4) an *in camera* review of the documentation from which credibility may be assessed. *See id.* at 186-87.

15

does not rely on the evidence from a confidential informant used to validate Plaintiff.[7] The evidence the Court relies on consists of that evidence that was either disclosed to Plaintiff or that Plaintiff has in his possession, i.e., the 128-B and drawing, the letter to a validated NLR member authored by Plaintiff and the 128-B authored by Correctional Officer Truitt.

In applying the "some evidence" standard, the Court may not re-weigh the evidence or judge the credibility of witnesses. Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985). Instead, it must look to see if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. Under this minimally stringent standard, any one of the pieces of evidence before the Court is sufficient to support the conclusion reached by the prison concerning Plaintiff's gang validation. See, Zimmerlee v. Keeney, 831 F.2d 183, 186-187 (9th Cir.1987). The Court further finds the evidence provided sufficiently reliable due to the self-incriminatory nature of the letter and drawing and the first hand knowledge of officer witnessing the roll-call. Id. Accordingly, the Court concludes that Plaintiff was afforded the process he was due and Defendants are entitled to judgment on this claim as a matter of law.

**E. CONCLUSION AND RECOMMENDATION**

The Court RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Due Process claim against all Defendants be DISMISSED. As the Motion for Summary Judgment on the Eighth Amendment Failure to Protect claim against Defendant Flores was previously denied and not addressed by Defendants in the instant Motion for Summary Judgment, the Court also RECOMMENDS that the action proceed on the Eighth Amendment failure to protect claim against Defendant Flores.[8]

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28

---

[7] As noted above, the Court declined to consider the use of the information submitted under seal because it was not disclosed to Plaintiff.

[8] The Findings and Recommendations issued on May 28, 2004, and the subsequent Order Adopting issued September 10, 2004, clearly stated that the Motion for Summary Judgment on the Eighth Amendment failure to protect claim with respect to Defendant Saturnio was granted but the Eighth Amendment claim against Defendant Flores was denied. (See Docs.240, 260.)

1  U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States
2  District Court, Eastern District of California.  Within THIRTY (30) days after being served with
3  a copy of these Findings and Recommendations, any party may file written Objections with the
4  Court and serve a copy on all parties.  Such a document should be captioned "Objections to
5  Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served
6  and filed within TEN (10) court days (plus three days if served by mail) after service of the
7  Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.
8  § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time
9  may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153
10  (9th Cir. 1991).

11  IT IS SO ORDERED.

12  **Dated:   July 28, 2005**                    /s/ Lawrence J. O'Neill
    b9ed48                                    UNITED STATES MAGISTRATE JUDGE